IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-03815

WILLIAM D. EMERSON II,

    Plaintiff,

v.

ALLIANCE FOR SUSTAINABLE ENERGY, LLC, a Delaware foreign limited liability company,

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, William D. Emerson II, by and through his attorneys, Sweeney & Bechtold, LLC, hereby submits his Complaint against the above-named Defendant as follows:

## INTRODUCTION

1. This is an employment discrimination suit brought by a former employee of Alliance for Sustainable Energy, LLC ("Alliance") who was discriminated against based on age and retaliated against after complaining about this unlawful treatment, including being terminated after six years of excellent employment, all in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA").

## PARTIES

2. Plaintiff William D. Emerson II is a resident of the State of Colorado.

3. Defendant Alliance is a Delaware limited liability company authorized to do business in Colorado.

4. Alliance operates the National Renewable Energy Laboratory ("NREL") in Golden, Colorado.

5. NREL is a national laboratory of the U.S. Department of Energy Office of Energy Efficiency & Renewable Energy.

6. Alliance's principal office is located at 15013 Denver West Parkway in Golden, Colorado 80401.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, in that this action arises under federal law, specifically the ADEA.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), as the unlawful employment practices alleged herein were committed within this judicial district.

9. At all relevant times, Defendant Alliance was covered by the definition of "employer" set forth in 29 U.S.C. § 630(b) of the ADEA.

10. The procedural prerequisites for the filing of this suit have been met. Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue letter.

## SPECIFIC ALLEGATIONS

11. As of the date of this complaint, Plaintiff is 57 years old.

12. Alliance hired Plaintiff as a contractor and then an employee in August 2012 and January 2013, respectively.

13. Plaintiff was specifically recruited by Connie Baca-Overly, the then-Manager of the IT Asset Management Team/Basic Ordering Agreement ("BOA") Ordering Group of Alliance.

14. Plaintiff was employed as an IT Professional II-Asset Management until his position was allegedly eliminated in August 2018.

15. Throughout Plaintiff's employment, he performed his duties satisfactorily or better.

16. During the time that Plaintiff reported to Ms. Baca-Overly, he received excellent reviews.

17. In July 2014, Alliance replaced Ms. Baca-Overly with Jack Patterson, who then became Plaintiff's supervisor.

18. Although the quality of Plaintiff's performance did not change at any point during his employment, he was subjected to increased scrutiny and unjustified criticism by Mr. Patterson.

19. Mr. Patterson is 20 years younger than Plaintiff.

20. Plaintiff was the oldest individual in his department; all of his peers were in their 30s and 40s.

21. Mr. Patterson often referred to Plaintiff using ageist pejorative terms, including calling Plaintiff "old," "the old guy in the room," "square," and "Mr. Rogers."

22. Mr. Patterson treated Plaintiff worse than Plaintiff's younger peers. Among other things, Mr. Patterson:

    a. Assigned more work to Plaintiff than Plaintiff's colleagues;

    b. Placed obstacles in Plaintiff's way to make completing assignments more challenging;

    c. Prohibited Plaintiff from working from home when he was sick despite allowing other subordinates to do so without question;

    d. Denied Plaintiff annual raises; and

    e.    Treated Plaintiff in a rude and condescending manner, often in front of colleagues.

23. On one occasion, Mr. Patterson even shoved a chair in front of Plaintiff while Plaintiff was attempting to leave the room after a staff meeting.

24. In late 2016, Mr. Patterson gave Plaintiff a rating of "needs improvement" for his annual review for the 2016 fiscal year, i.e., October 1, 2015 through September 30, 2016.

25. Mr. Patterson did this despite the fact that, according to Alliance's own productivity data from ServiceNow reports, Plaintiff had personally processed over 98% of the customer requests that the team had handled, including PCard transactions, purchase requisitions generated, and knowledge base articles.

26. In January 2017, Mr. Patterson attempted to place Plaintiff on a performance improvement plan ("PIP") for alleged performance issues that lacked basis, including that Plaintiff purportedly had issues with accuracy in data entries.

27. In fact, the data entries about which Mr. Patterson expressed concern were from 2010, years before Plaintiff was even an Alliance contractor or employee.

28. Again, at the time when Mr. Patterson attempted to put Plaintiff on a PIP, Plaintiff was performing much of the work assigned to the IT Asset Management Team/BOA Ordering Group.

29. For example, Plaintiff was completing upwards of 500 tasks when his other team members altogether had completed fewer than 100.

30. Based on reasonable belief, Alliance's HR and/or Legal departments ultimately directed Mr. Patterson not to proceed with the PIP.

31. In early 2017, Alliance demoted Mr. Patterson and replaced him with Peter Hathaway.

32. Unfortunately, Mr. Hathaway adopted Mr. Patterson's discriminatory animus towards Plaintiff and continued to treat Plaintiff poorly. This included Mr. Hathaway:

    a. Berating Plaintiff during their one-on-one meetings;

    b. Treating Plaintiff poorly in meetings with other staff from the IT Asset Management Team/BOA Ordering Group;

    c. Excluding Plaintiff from numerous team meetings without explanation;

    d. Chiding Plaintiff for taking handwritten notes during meetings and demanding to know what he had just written down;

    e. Denying Plaintiff an annual raise;

    f. Telling Plaintiff to "slow down" with respect to his work productivity because it was making the "rest of the team look bad"; and

    g. In June 2017, putting Plaintiff on a PIP that was virtually identical to the PIP that Mr. Patterson had attempted to put Plaintiff on earlier that year.

33. Mr. Hathaway's dislike of Plaintiff was so obvious that Plaintiff's colleagues often commented on it, including asking Plaintiff why Mr. Hathaway was treating Plaintiff differently.

34. Plaintiff first expressed concerns to Alliance's HR department that he was being treated differently because of his age in the fall of 2016.

35. Plaintiff lodged additional concerns with Donna Wachter in HR, Alliance's ombudsperson, and Mr. Hathaway's manager, James Lyall, between September 2016 and February 2017.

36. Alliance took no actions in response to Plaintiff's concerns until Plaintiff reiterated his discrimination complaint to Ms. Wachter in writing on June 22, 2017.

37. At some point during the summer and/or fall of 2017, Alliance's HR manager at the time, Susan Jackson, spoke with at least three of Plaintiff's colleagues in the IT Asset Management Team/BOA Ordering Group regarding Plaintiff's complaint.

38. These individuals told Plaintiff that they had reported to Ms. Jackson that they had witnessed Mr. Patterson and/or Mr. Hathaway target Plaintiff.

39. Although Ms. Jackson promised to provide the results of her investigation to Plaintiff by late October 2017, this never occurred.

40. In fact, Plaintiff was never told about the results of the investigation.

41. In the months following Plaintiff's complaint, Mr. Hathaway took a number of retaliatory actions against Plaintiff, including redistributing about 80% of Plaintiff's job duties to other members of the IT Asset Management Team/BOA Ordering Group without any explanation.

42. Mr. Hathaway also repeatedly threatened to put Plaintiff back on a PIP with basis.

43. Mr. Hathaway made these threats even though Plaintiff had successfully completed the June 2017 PIP and Mr. Hathaway had given Plaintiff a "meets or exceeds" annual rating for his performance from October 1, 2016 through September 30, 2017.

44. In August 2018, Alliance told Plaintiff that his position had been eliminated "as a result of restructuring."

45. In September or October 2018, Alliance posted a job for an IT Asset Management Analyst.

46. The duties and responsibilities listed in the IT Asset Management Analyst job posting were identical to the job that Plaintiff was performing at Alliance before Mr. Hathaway took away a considerable number of Plaintiff's duties in early 2018.

47. Plaintiff applied to the IT Asset Management Analyst position in or around early October 2018.

48. Alliance did not even interview Plaintiff for the position.

49. In November 2018, Plaintiff sent a letter to Alliance through Plaintiff's attorney, stating that he believed that he was subjected to age discrimination and retaliation in violation of the ADEA.

50. Based on reasonable belief, Alliance filled the open IT Asset Management Analyst position after receiving Plaintiff's counsel's letter.

51. Plaintiff filed EEOC charge no. 541-2019-01265 on February 27, 2019 in which he alleged discrimination and retaliation in violation of the ADEA.

52. The EEOC issued a notice of right to sue on Plaintiff's charge on September 30, 2020.

**FIRST CLAIM FOR RELIEF**
(Age Discrimination in violation of the ADEA)

53. The foregoing allegations are realleged and incorporated herein by reference.

54. By virtue of his age, Plaintiff belongs to a protected group under the ADEA.

55. Alliance subjected Plaintiff to less favorable terms and conditions of his employment based on age. This treatment included, but is not limited to: referring to Plaintiff using ageist pejorative terminology; treating Plaintiff worse than his younger colleagues; denying Plaintiff annual raises in 2015, 2016, and 2017; subjecting Plaintiff to unnecessary discipline; giving Plaintiff a lower than justified rating in an annual review; assigning more work to Plaintiff than his colleagues and then criticizing Plaintiff for his high productivity; creating a hostile work environment based on Plaintiff's age; terminating Plaintiff based on the false claim that

Plaintiff's position had been eliminated; and failing to hire or even interview Plaintiff for the IT Asset Management Analyst position.

56. The discriminatory actions of Alliance were done knowingly and willfully, justifying an award of liquidated damages.

57. As a direct and proximate result of Alliance's actions, Plaintiff has suffered damages, including lost wages and benefits, loss of career progression, attorney fees and costs, and other pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Retaliation in violation of the ADEA)

58. The foregoing allegations are realleged and incorporated herein by reference.

59. Plaintiff participated in statutorily protected activity by opposing practices targeted at him that were unlawful under the ADEA.

60. As a result of Plaintiff's protected opposition to discrimination, Alliance retaliated against him by subjecting him to less favorable terms and conditions of employment as described in this Complaint, including but not limited to: failing to mitigate the situation in response to Plaintiff's complaints about discriminatory treatment; redistributing about 80% of Plaintiff's job duties to other members of his team without any explanation; threatening to put Plaintiff on another PIP without basis; terminating Plaintiff based on the false claim that Plaintiff's position had been eliminated; and failing to hire or even interview Plaintiff for that open position.

61. Alliance's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

62. Alliance's conduct violated 29 U.S.C. § 623(d) of the ADEA.

63. As a direct and proximate result of Alliance's actions, Plaintiff has suffered damages, including lost wages and benefits, loss of career progression, attorney fees and costs, and other pecuniary losses.

WHEREFORE, Plaintiff William D. Emerson II respectfully requests that this Court enter judgment in his favor and against Defendant Alliance and order the following relief as allowed by law:

A. Back pay and benefits;

B. Reinstatement or front pay and benefits;

C. Injunctive and/or declaratory relief;

D. Punitive damages and/or liquidated damages as allowed;

E. Attorney fees and costs of the action, including expert witness fees, as appropriate;

F. Pre-judgment and post-judgment interest at the highest lawful rate; and

G. Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted December 29, 2020.

By: SWEENEY & BECHTOLD, LLC

 s/Charlotte N. Sweeney
 Charlotte N. Sweeney
 650 S. Cherry St., Ste. 700
 Denver, CO 80246
 Telephone: (303) 865-3733
 Fax: (303) 865-3738
 E-mail: cnsweeney@sweeneybechtold.com

 s/Ariel B. DeFazio
 Ariel B. DeFazio
 650 S. Cherry St., Ste. 700
 Denver, CO 80246
 Telephone: (303) 865-3733
 Fax: (303) 865-3738
 E-mail: abdefazio@sweeneybechtold.com

 ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
8201 S. Carr St.
Littleton, CO 80128

10

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

                By:    SWEENEY & BECHTOLD, LLC

                        s/Charlotte N. Sweeney
                        Charlotte N. Sweeney
                        650 S. Cherry St., Ste. 700
                        Denver, CO 80246
                        Telephone: (303) 865-3733
                        Fax: (303) 865-3738
                        E-mail: cnsweeney@sweeneybechtold.com

                        s/Ariel B. DeFazio
                        Ariel B. DeFazio
                        650 S. Cherry St., Ste. 700
                        Denver, CO 80246
                        Telephone: (303) 865-3733
                        Fax: (303) 865-3738
                        E-mail: abdefazio@sweeneybechtold.com